UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TEINA MARI LIONETTI | CASE NO. SA CV 17-2255-MWF<br><br>ORDER ON APPEAL AFFIRMING THE BANKRUPTCY COURT |

Before the Court is an appeal from the United States Bankruptcy Court (the Honorable Theodor C. Albert, United States Bankruptcy Judge). Plaintiff, The Law Offices of Steven H. Marcus (the "Law Firm") appeals from the Bankruptcy Court's Order Granting Defendant's Motion for Summary Judgment, entered on November 29, 2017.

The Law Firm filed an Opening Brief on March 15, 2018. (Docket No. 10). Defendant and Appellee Teina Mari Lionetti ("Lionetti") filed Response Brief on April 27, 2018. (Docket No. 12). Marcus filed a Reply Brief on May 11, 2018. (Docket No. 14). Subsequently, the parties stipulated to the submission of supplemental briefing. (Docket Nos. 15-16). On July 20, 2018, the Law Firm submitted its supplemental brief ("Law Firm Supplemental Brief" (Docket No. 17)), and Lionetti submitted her supplemental brief, ("Lionetti Supplemental Brief" (Docket No. 18)).

The Court held a hearing on December 11, 2018.

1

For the reasons discussed below, the Bankruptcy Court's Order Granting Defendant's Motion for Summary Judgment is **AFFIRMED**.

I. <u>**BACKGROUND**</u>

In early 2011, Lionetti was referred to the Law Firm in connection with her divorce proceeding. On January 25, 2011, she visited the Law Firm's office. During that meeting, Lionetti explained she had limited income and outstanding debts, including a $50,000 debt owed to her prior attorney. (Appendix in Support of Appellant's Opening Brief ("AA") at 351 (Docket No. 11)). At the meeting, the Law Firm presented Lionneti with an Engagement Letter that set forth the Law Firm's representation of Lionetti in the divorce proceeding, and purported to grant a charging lien to the Law Firm with respect to any recovery from the divorce proceeding. (*Id.* at 352). Lionetti signed the Engagement Letter at the meeting that day, and paid the Law Firm a retainer fee of $10,000 using three separate credit cards. (*Id.*).

During the course of the representation, Lionetti advised the Law Firm that she was considering bankruptcy, and the Law Firm provided a referral for bankruptcy counsel. Lionetti also expressed concern about mounting legal bills in the divorce proceeding. (*Id.*).

In January 2014, the court presiding over the divorce proceedings determined that Lionetti's ex-husband's 401(k) holding $272,278.98 was the sole and separate property of Lionetti. In April 2014, the funds in the 401k were transferred to Lionetti's individual retirement account. (*Id.*). The legal fees owed to the Law Firm for its representation in the divorce proceeding were approximately $150,000. (*Id.*).

In February 2015, Lionetti filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). (Supplemental Appendix in Support of Appellee's Opening Brief ("SA") at 281 (Docket No. 13)). In May 2015, the Law Firm filed a

Complaint against Lionetti, seeking a judgment for $150,248.25, plus interest; a ruling that those costs are non-dischargeable under 11 U.S.C. § 523(a)(2)(A); a judgment for allowance and recovery of attorneys' fees and costs; and a ruling that the Law Firm holds an enforceable charging lien against the property of Lionetti and her estate. (AA at 11).

On August 30, 2017, Lionetti filed a Motion for Summary Judgment, seeking judgment on each claim asserted in the Complaint. (*Id.* at 84). After briefing from both parties, the Bankruptcy Court published a Tentative Ruling granting the Motion for Summary Judgment. (*Id.* at 365). The Bankruptcy Court held a hearing on November 9, 2017, at which it indicated it intended to adopt the Tentative Ruling. (*Id.* at 394, 397). On November 29, 2017, the Bankruptcy Court entered an order adopting the Tentative Ruling and its statements at the hearing, granting the Motion for Summary Judgment, and dismissing each of the claims in the Complaint with prejudice. (*Id.* at 399). Subsequently, the Law Firm appealed.

## II. STANDARD OF REVIEW

The Court reviews de novo a bankruptcy court's order granting summary judgment. *Shahrestani v. Alazzeh (In re Alazzeh)*, 509 B.R. 689, 692-93 (B.A.P. 9th Cir. 2014). "An order granting summary judgment will only be affirmed if the evidence, read in the light most favorable to the non-moving party, demonstrates the absence of a genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Aguilera v. Baca*, 510 F.3d 1161, 1167 (9th Cir. 2007) (citation omitted). The Court reviews the Bankruptcy Court's alleged evidentiary errors for an abuse of discretion, and the Court will only reverse if it finds "both error and prejudice." *Geurin v. Winston Indus., Inc.*, 316 F.3d 879, 882 (9th Cir. 2002).

Local Bankruptcy Rule 7056-1 makes Federal Rule of Civil Procedure 56 applicable in bankruptcy proceedings.

## III. DISCUSSION

Section 523 of the United States Bankruptcy Code provides in relevant part, "A discharge under [Chapters 7, 11, 12, or 13] of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. 523(a)(2)(A). This provision "prohibits the discharge of any enforceable obligation for money, property, services, or credit, to the extent that the money, property, services, or credit were obtained by fraud." *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010). The Ninth Circuit has observed that "exceptions to discharge should be limited to dishonest debtors seeking to abuse the bankruptcy system in order to evade the consequences of their misconduct." *Hawkins v. Franchise Tax Bd. of Cal.*, 769 F.3d 662, 666 (9th Cir. 2014) (citation omitted).

In granting Lionetti's Motion for Summary Judgment, the Bankruptcy Court concluded that the Law Firm had failed to provide specific evidence in support of its claim that, pursuant to § 523(a)(2)(A), Lionetti's debts to Marcus were non-dischargeable due to fraud. (AA at 353). The Bankruptcy Court also concluded that the charging lien purportedly created by the Engagement Letter is void because the Law Firm failed to comply with Rule 3-300 of the Rules of Professional Conduct by not providing Lionetti with a reasonable opportunity to seek review of the Engagement Letter from an independent attorney. (*Id.*).

The Law Firm challenges the Bankruptcy Court's conclusions in three respects:

*First*, it argues that the Bankruptcy Court failed to properly apply the factors set forth in *Citibank South Dakota, N.A. v. Dougherty* (*In re Dougherty*), 84 B.R. 653, 657 (B.A.P. 9th Cir. 1988), known as the *Dougherty* Factors, to infer that,

4

considering the totality of the circumstances, Lionetti did have an intent to defraud under § 523(a)(2)A. (Opening Br. at 25-26).

***Second***, it argues that the Bankruptcy Court erred by failing to apply the Supreme Court's decision in *Husky International Electrics, Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016), which supports a finding that the transfer of Lionetti's ex-husband's 401(k) funds to Lionetti's retirement account was a fraudulent transfer that constitutes "actual fraud" under § 523(a)(2)A. (Opening Br. at 31-21).

***Third***, the Law Firm argues that the Bankruptcy Court failed to apply *Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh)*, 973 F.2d 1454 (9th Cir. 1992), which holds that the Rules of Professional Conduct were not intended to protect clients who wrong their lawyers, and therefore supports a finding that the charging lien was, in fact, valid. (Opening Br. at 32-33).

### A. *Dougherty* Factors

The Ninth Circuit has consistently set forth the same elements for proving a claim of non-dischargeability under § 523(a)(2)(A):

 (1) the debtor made . . . representations;

 (2) that at the time he knew they were false;

 (3) that he made them with the intention and purpose of deceiving the creditor;

 (4) that the creditor relied on such representations; [and]

 (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*In re Sabban*, 600 F.3d at 1222 (quoting *Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir. 1996)). The Bankruptcy Court analyzed these factors, and determined that the Law Firm failed to point to any specific misrepresentations that were made with knowledge of their falsity and with an intent to deceive. (AA at 362).

The Law Firm now argues the Bankruptcy Court should have applied the *Dougherty* Factors to reach a different result, but nowhere in the Opening Brief or Reply Brief does the Law Firm actually set out the *Dougherty* Factors, or explain why they are applicable here. In fact, as Lionetti points out, they are not applicable here. (*See* Response Br. at 27-28).

The *Dougherty* Factors, set forth in *In re Dougherty*, 84 B.R. at 657, and *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1087-88 (9th Cir. 1996), were developed to address the special problem of proof of the elements of representation and reliance inherent to **third party credit card transactions**, which are different than the typical two-party credit transactions. *See In re Dougherty*, 84 B.R. at 656; *In re Eashai*, 87 F.3d at 1087 (acknowledging that "credit card debts are different from other types of debts which are discharged for fraud" because they involve three parties, and applying the "totality of circumstances" test, including the twelve *Dougherty* factors, to determine a debtor's fraudulent intent in the credit card debt context). Because the creditor in a credit card transaction does not deal face-to-face with the debtor, it is difficult for the creditor to prove misrepresentation and reliance for purposes of proving non-dischargeability under § 523(a)(2)(A). *In re Eashai*, 87 F.3d at 1087. The *Dougherty* Factors allow courts to infer the existence of a debtor's intent not to pay if the totality of circumstances demonstrates deceptive conduct. *Id.*

The Ninth Circuit has rejected application of these factors in the context of two-party transactions, such as that between the Law Firm and Lionetti. *See Turtle Rock Meadows Homeowners Assoc. v. Slyman (In re Slyman)*, 234 F.3d 1081, 1086 (9th Cir. 2000). In *Slyman*, a homeowners association argued that the Ninth Circuit should extend the "totality of the circumstances" analysis the Ninth Circuit has applied to credit card transactions to transactions between homeowners and homeowners

associations. *Id.* The Ninth Circuit held that homeowner/homeowners association transactions "do not bear the distinguishing characteristic of card holder/credit card company transactions" because they are not "intermediated by a third-party vendor." *Id.* Because the homeowner/homeowners association transaction was "direct and without intermediation," the Ninth Circuit held the homeowners association had to prove the elements of misrepresentation and reliance directly and by a preponderance of the evidence. *Id.* Because the homeowners association failed to do so, summary judgment was properly granted to the debtor. *Id.*; *see also First Nat'l Bank of Omaha v. Zaldana (In re Zaldana)*, No. BR 12-14791, 2013 WL 2369754, at *7 (Bankr. E.D. Cal. Mar. 21, 2013) ("In a two-party transaction, the creditor 'must prove the elements of misrepresentation and reliance directly.' By contrast, in a three-party transaction, the creditor can 'establish these two elements by reference to the 'totality of the circumstances.'" (citations omitted)).

None of the cases to which the Law Firm cites apply the *Dougherty* Factors outside of the three-party credit card transaction context, and the Law Firm fails to explain why the transaction between the Law Firm and Lionetti was not "direct and without intermediation." In the Reply Brief, the Law Firm appears to argue that the totality of the circumstances test must be applied because intent may often be proved through circumstantial evidence. (Reply Br. at 17-18). The Law Firm reiterated this argument at the hearing. It is true that "[b]ecause intent is difficult to prove through direct evidence, it 'may be established by circumstantial evidence." *Salehsari v. Aalam (In re Aalam)*, 538 B.R. 812, 821 (Bankr. C.D. Cal. 2014) (citation omitted). However, proof of intent by circumstantial evidence is not the same as inference of misrepresentation and reliance through the totality of the

circumstances test and the *Dougherty* Factors. The Law Firm cites to no authority demonstrating that it is.

The Bankruptcy Court did not err when it did not apply the *Dougherty* Factors of the "totality of the circumstances" test to infer the existence of misrepresentations or reliance. Rather, the Bankruptcy Court correctly concluded that the Law Firm failed to proffer any evidence that Lionetti had an intent not to pay the Law Firm when she signed the Engagement Letter. "[I]nitial performance in accordance with [a promise] negates any possible inference of fraud." *Ward v. Decret (In re Decret)*, No. BK 16-11356-PC, 2017 WL 4097813, at *2 (Bankr. C.D. Cal. Sept. 13, 2017). Here, the undisputed evidence is that Lionetti paid the $10,000 retainer fee upon signing the Engagement Letter, initially performing her obligations under the agreement. The Law Firm has offered no evidence that Lionetti did not initially perform the agreement, and that she did not intend to continue performing. The Bankruptcy Court likewise correctly concluded that the Law Firm failed to offer any specific evidence of any other representations. (AA at 360).

In its papers, the Law Firm repeatedly points to a purported "admission" by Lionetti (*see, e.g.*, Reply Br. at 19): an email sent to various people (notably, it does *not* appear she sent the email to the Law Firm), in which she lists issues she discussed with a bankruptcy attorney, including "$80,000 to Steve Marcus ($50,000 to be paid by ex's Retirement)." (AA at 238). The Court fails to see how this is evidence of intent not to perform under the Engagement Letter. If anything, the email suggests Lionetti *did* intend to pay the Law Firm.

The Court concludes that the Bankruptcy Court did not err when it declined to apply the *Dougherty* Factors, and that it correctly concluded that

the Law Firm failed to present evidence of specific misrepresentations that Lionetti made with knowledge of their falsity and with an intent to deceive.

### B. Actual Fraud

The Law Firm also argues that the Bankruptcy Court erred by ignoring the Supreme Court's decision in *Husky International Electrics, Inc. v. Ritz*, 136 S. Ct. at 1586. *Husky* held that "actual fraud" under § 523(a)(2)A) "encompass[es] fraudulent conveyance schemes, even when those schemes do not involve a false representation." *Id.* at 1590. Debts obtained through fraudulent conveyance are therefore non-dischargeable under § 523(a)(2)(A). *Id.* In *Husky*, the fraudulent conveyance consisted of the defendant's transfer of his company's assets – which could have been used to pay creditors like Husky – to other companies within the defendant's control. *Id.* at 1585. In *DZ Bank AG Deutsche Zentral-Gennossenschaft Bank v. Meyer*, 869 F.3d 839, 843-44 (9th Cir. 2017), the Ninth Circuit applied *Husky* to conclude that a claim was non-dischargeable against an individual where he caused his company to fraudulently transfer assets. When the debtor "indirectly transferred all of [the company's] assets to another corporation, he . . . depleted the value of his assets to the detriment of his creditors." *Id.* at 844.

Here, the Law Firm contends that Lionetti fraudulently transferred funds from her husband's 401k to her retirement account. Nowhere in the papers does the Law Firm explain how this transfer constitutes a fraudulent transfer. "Fraudulent conveyances typically involve 'a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration.'" *Husky*, 136 S. Ct. at 1579 (quoting *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 540-41 (1994)). The fraud occurs in "the acts of concealment and hindrance." *Id.* The funds at issue here were first held in Lionetti's ex-husband's ERISA-protected 401k account, and by order of the court presiding over the divorce proceedings, they were then transferred to Lionetti and into her retirement fund. (Response Br. at 31; SA at 278-79). The Law Firm does not explain how such a transfer is a fraudulent

9

conveyance. Unlike in *Husky* and *DZ Bank*, this is not a situation in which Lionetti transferred funds that were within her control to a third party, to the Law Firm's detriment.

In the Supplemental Brief, the Law Firm argues that the Supreme Court's recent decision in *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752 (2018), provides further support for the contention that the Bankruptcy Court failed to apply *Husky*. (Law Firm Supp. Br. at 5-6). This argument is also unavailing. Again, *Lamar* simply reaffirms the holding in *Husky* that, "Section 523(a)(2)(A) has been applied when a debt arises from 'forms of fraud, like fraudulent conveyance schemes, that can be effected without representation.'" *Lamar*, 138 S. Ct. at 1763 (quoting *Husky*, 136 S. Ct. at 1586). *Lamar* provides no support for the application of *Husky* to the facts of this case.

The Bankruptcy Court did not err when it observed that *Husky* is "entirely inapposite to the case at bar." (AA at 364).

### C. The Charging Lien

Last, the Law Firm contends that the Bankruptcy Court erred by "ignoring" the Ninth Circuit's decision in *In re Kirsh*, 973 F.2d at 1454, when it concluded that the charging lien was void. (Opening Br. at 32). When it granted Lionetti's Motion for Summary Judgment, the Bankruptcy Court concluded that the Law Firm failed to comply with Rule 3-300 of the California Rules of Professional Responsibility when it purported to create a charging lien because Lionetti signed the Engagement Letter on the same day she was presented with it, and therefore was not given a reasonable opportunity to seek advice from independent lawyer, as is required when a lawyer attempts to acquire an adverse interest against the client. (AA at 354-55).

Indeed, Rule 3-300 provides, in relevant part, "A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless . . . [t]he client is advised in writing that the client may seek the advice of an independent lawyer of

the client's choice and is given a reasonable opportunity to seek that advice." Cal. R. Prof. Conduct 3-300(B).

At the hearing, the Law Firm expressed concern that this "cooling off" period could inhibit the public from securing counsel in emergency situations, such as when a hearing is scheduled the next day.

But authorities interpreting Rule 3-300(B) agree that if a client signs a fee agreement granting a charging lien on the same day the client is presented with the agreement, the client has not been provided with a reasonable opportunity to seek advice from an independent lawyer. *See Nunez v. Parker (In re Shaver Lakewoods Dev. Inc.)*, No. AP 14-01005, 2016 WL 7188660, at *6 (B.A.P. 9th Cir. Nov. 29, 2016) ("Because the clients signed the agreement on that very day, there was no reasonable opportunity for independent review."); *Ritter v. State Bar*, 40 Cal. 3d 595, 603, 221 Cal. Rptr. 134 (1985) (client is not given a reasonable opportunity to seek advice from an independent lawyer if an agreement is signed "within minutes after it was first presented" to the client); Mark L. Tuft, et al., *Cal. Prac. Guide Prof'l Resp.* ¶ 4:292 (Rutter 2016) ("What constitutes a reasonable amount of time under [Rule] 3-300(C) for a client to consult with independent counsel before signing the consent depends on the facts and circumstances of the case—e.g., the nature of the transaction, the client's sophistication, etc. However, at least 24 hours should elapse between presentation of the written proposal and the client's execution of the consent form.").

It is undisputed that Lionetti signed the Engagement Letter on the same day that the Law Firm presented it to her, without leaving the Law Firm's offices and without speaking to an independent lawyer. The Law Firm does not proffer any evidence suggesting that Lionetti did consult with an independent lawyer, and does not explain why the authorities described above do not apply here.

Instead, the Law Firm argues that, had the Bankruptcy Court properly applied the holding in *Kirsh*, it would not have granted summary judgment to Lionetti on the

issue of the charging lien. (Opening Br. at 33). In *Kirsh*, the debtor defendants argued that their lawyer's failure to give them a reasonable opportunity to seek the advice of an independent counsel when entering into a business transaction with them in which they granted the lawyer a deed of trust on their real property precluded a claim to find the defendants' debt non-dischargeable under § 523(a)(2)(A). *In re Kirsh*, 973 F.2d at 1161. The Ninth Circuit determined that the lawyer's failure to comply with his ethical obligations did not preclude the claim, which was brought by the pension plan the lawyer established to provide for his retirement, and from which he loaned money to the defendants. *Id.* at 1455, 1161. The Ninth Circuit reasoned that the "Rules of Professional Conduct do not establish substantive legal duties—they neither create, augment nor diminish any duties." *Id.* at 1161. "They were not intended as a protection for clients who wrong their lawyers." *Id.*

  *Kirsh* did not address whether the lien established was enforceable. It only addressed whether the pension plan's claim for relief was barred by the lawyer's failure to comply with the Rules of Professional Conduct. *See id.* Here, Lionetti does not argue that the Law Firm's breach of the Rules of Professional Conduct should bar its claim for non-dischargeability entirely, as was argued in *Kirsh*; rather, Lionetti argues that the breach renders the charging lien void. The Law Firm does not explain how the Bankruptcy Court should have applied the holding in *Kirsh* to reach a different result on Lionetti's Motion for Summary Judgment. The Bankruptcy Court did not err declining to apply *Kirsh* in the manner urged by the Law Firm.

## IV. CONCLUSION

For the reasons discussed above, the Court **AFFIRMS** the Bankruptcy Court's Order Granting Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED: January 23, 2019.

MICHAEL W. FITZGERALD
United States District Judge

CC: Bankruptcy Court